**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**MICHELE BRINK,**
**Plaintiff,**

**v.** **Civil Action No. 4:14CV24**

**ROBERT A. McDONALD, Secretary of Veterans Affairs,**
**Defendant.**

**ORDER ON FINAL PRETRIAL CONFERENCE**

In conformance with the Local Rules for the United States District Court for the Eastern District of Virginia relating to pre-trial procedure, it is ORDERED that:

1. **The parties hereto agree upon a stipulation with respect to certain undisputed facts as follows.**

(a) On September 5, 2006, Plaintiff, Michele Brink, was appointed to a position as a registered nurse at the Hampton Veterans Affairs (VA) Medical Center, Hampton, Virginia.

(b) On December 22, 2008, Plaintiff was detailed to the Telecare Nurse Group unit (Telecare) as an accommodation for a back injury, and was formally assigned to that position by letter dated February 13, 2009. Plaintiff remained in Telecare until August 25, 2012.

(c) All new employees of the Hampton VA are required to receive training on the Equal Employment Opportunity (EEO) laws (such as Title VII and the No FEAR Act), the laws and policies against discrimination in the workplace, information on an employee's rights and responsibilities under those laws, and the procedures concerning what an employee should do and who the employee should contact if he or she thinks think they have experienced workplace discrimination.

(d) Plaintiff received new employee orientation on September 7, 2006, which included training on the No FEAR Act and sexual harassment. Plaintiff received additional refresher EEO training on the following dates: September 14, 2006 (sexual harassment training); November 9, 2006 (No FEAR Act training and sexual harassment training); June 12, 2008 (No FEAR Act training); January 29, 2010 (No FEAR Act training); December 2, 2010 (sexual harassment training); January 10, 2012 (combined harassment/No FEAR Act training); December 23, 2013 (combined harassment/No FEAR Act training).

(e) The Secretary of Veterans Affairs issues annual policy statements to all employees to provide a summary of "VA's workplace polices with respect to EEO, diversity, and inclusion." These policy statements are emailed to all employees of the Department of Veterans Affairs, to include all employees of the Hampton VA Medical Center. Plaintiff admits receiving and being aware of the Secretary's annual policy statements.

(f) The Veterans Health Administration (VHA) oversees VA medical centers and issues policies and procedures for medical centers, including VHA Directive 2008-045, "Anti-Harassment Policy," (August 7, 2008). VHA Directive 2008-045 is available to all employees through the VA's internal website for employees. Plaintiff was aware of VHA Directive 2008-045 since 2008 and that it was posted on the VA employee website.

(g) Since at least January 2006, the Directors of the Hampton VA have issued EEO policy statements notifying all employees of the Hampton VA's policy against all workplace discrimination, including workplace harassment. The Hampton VA Directors' EEO policy statements are included with materials provided to all employees during new employee orientation, and are also posted in prominent locations around the Hampton VA. Plaintiff was aware of the Director's EEO policy statements and that they have been posted at the facility since at least 2008.

**2. (a) The parties hereto agree that the following exhibits may be introduced in evidence without the necessity of further proof.**

| NO. | DESCRIPTION |
|---|---|
| 1. | Email dated 1/12/09 (Elliott to McQueen) (BRINK_22181)[1] |
| 2. | Email dated 8/18/2011 from Brink (PLF_00001) |
| 3. | Email dated 8/26/2011 from Brink (BRINK_40161) |
| 4. | Email dated 9/7/2011 from Brink (BRINK_41084) |
| 5. | Email dated 10/17/ 2011 (Elliott to AFGE) (BRINK_40150) |
| 6. | Email dated 10/17/2011 (Elliott to Frazier) (BRINK_40677) |
| 6. | Email dated 10/19/2011 (Brink to Orie) (BRINK_20575) |
| 8. | Email dated 10/26/2011 (Brink to Frazier) (BRINK_20576) |
| 9. | Email dated 11/18/2011 (Brink to Frazier) (BRINK_ 40815 – 40819) |
| 10. | Email dated 10/31/2011 (Brink to Bradford) (BRINK_30058) |
| 11. | Email dated 11/3/2011 (Brink to Elliott) (BRINK_41383) |
| 12. | Email dated 12/27/2011 (Frazier to group) (BRINK_40428) |
| 13. | Email dated 3/1/2012 (Brink to Elliott) (BRINK_41035) |
| 14. | Email dated 3/2/2012 (Brink to Elliott) (PLF_01054) |
| 15. | Email dated 3/2/2012 (Frazier to Brink) (BRINK_21797-21799) |
| 16. | Email dated 3/2/2012 (Brink to Orie) (BRINK_20652 |

[1] Email dates are included for convenience and refer to the date in the first email. Email exhibits are intended to encompass all emails contained in the email string.

| NO. | DESCRIPTION |
|---|---|
| 17. | Email 3/5/12 (Brink to Elliott) (BRINK_41079-41080) |
| 18. | Email dated 3/5/2012 (Tindall to Orie) (BRINK_40038-40039) |
| 19. | Email dated 3/5/2012 (with attached ROC) (BRINK_40077-40079) |
| 20. | Email dated 3/6/2012 Ajayi to Brink (BRINK_20707) |
| 21. | Email dated 3/6/2012 Ajayi to Orie (BRINK_40232) |
| 22. | Email dated 3/6/2012 (O'Neal to Brink) (BRINK_40166 – 40167) |
| 23. | Email dated 3/6/2012 (Brink to Orie) (BRINK_20588) |
| 24. | Report of Contact (Solomon) re: 3/2/2012 (BRINK_20407 – 20408) |
| 25. | Report of Contact by (Brandon) re: 3/2/2012 (BRINK_ 20410 - 20411) |
| 26. | Report of Contact by (McQueen), re: 3/2/2012 (BRINK_20412 - 20413) |
| 27. | Email dated 3/6/2012 from Brink (BRINK_41317-41319) |
| 28. | Email dated 3/8/2012 (meeting confirmation) (BRINK_20597) |
| 29. | Email dated 3/8/2012 (Frazier to Campbell-Skelly) (BRINK_41032) |
| 30. | 3/9/2012 Memo (BRINK_20426) |
| 31. | Email dated 3/13/2012 (Orie to group) (BRINK_40332) |
| 32. | March 14, 2014 Staff meeting minutes (BRINK_26082-26085) |
| 33. | Email dated 3/14/2012 (Brink to Frazier and Orie) (BRINK_41212-41213) |
| 34. | Email dated 3/14/2012 (Elliott to Brink) (BRINK_41472) |
| 35. | Email dated 3/14/2012 (Jefferson to Frazier) (BRINK_26260-26261) |
| 36. | Email dated 3/14/2012 (Elliott to Brink) (BRINK_40004) |
| 37. | Email dated 3/15/2012 (Frazier to Brandon) (BRINK_25495) |
| 38. | 3/28/2012 Counseling Letter (BRINK_26086) |
| 39. | Email dated April 2012 from Brink (PLF_01095) |
| 40. | Email dated 5/7/2012 from Frazier (BRINK_40351) |
| 41. | Email dated 5/22/2012 (Orie to group) (BRINK_20414) |
| 42. | Director's EEO Policy Statements, 2006-2010 (BRINK_26152, 26156, 26159-26162) |
| 43. | VHA Directive 2008-045 (Anti-harassment policy) (BRINK_26077-26081) |
| 44. | VA Secretary's EEO Policy Statement (2009) (BRINK_26212-26218) |
| 45. | VA Secretary's EEO Policy Statement (2010) (BRINK_26219-26225) |
| 46. | VA Secretary's EEO Policy Statement (2011) (BRINK_26226-26233) |
| 47. | VA Secretary's EEO Policy Statement (2013) (BRINK_25835-25843) |
| 48. | Complaint of Discrimination (1/31/2008) (BRINK_20794) |
| 49. | Complaint of Discrimination (9/25/2008) (BRINK_21088) |
| 50. | O'Neal Article (PLF_02097 – 02098) |
| 51. | Plaintiff's "Sticky Notes" (PLF_02293 – 02312) |
| 52. | Plaintiff's Notebook (PLF_01554 – 01599) |
| 53. | Proficiency Report, December 2008 – December 2009 (Brink_20043 -20046) |
| 54. | Proficiency Report, December 2009 – December 2010 (PLF_00905 -00908) |
| 55. | Proficiency Report, December 2010 – December 2011 (Brink_20461 -20464) |
| 56. | Stipulations |
| 57. | Final Agency Decision, redacted |

**2. (b) Plaintiff desires to introduce the following exhibits in evidence, but Defendant objects to said exhibits on the following grounds.**

| NO. | DESCRIPTION | OBJECTION |
|---|---|---|
| P/T No. | Dept. of Veterans Affairs Investigative Report (00005-00021) | Hearsay, overbroad, lack of foundation |

Overruled if references to employee complaints other than those pertaining to hostile work environment, are redacted.

**2. (c) Defendant desires to introduce the following exhibits in evidence, but Plaintiff objects to said exhibits on the following grounds.**

Defendant has no other exhibits other than the agreed exhibits. Defendant reserves the right, however, to utilize any document or exhibit, whether previously identified or disclosed, for purposes of cross examination and impeachment.

**3. (a) The names and addresses of the witnesses who will or may testify in person or by deposition at the instance of Plaintiff, are as follows. Defendant's objections (if any) to these witnesses are so noted.**

Witnesses who will testify:

| NO. | WITNESSES | OBJECTIONS |
|---|---|---|
| 1. | Michele Brink<br>20537 Madison Court<br>Smithfield, Virginia 23430 | Object only to following extent:<br>- Any testimony that is limited or excluded pursuant to any of the Defendant's motions in limine<br>- Any testimony concerning the overall racial makeup of the Hampton VA. F.R.E. 403 |
| 2. | Kevin Brink<br>20537 Madison Court<br>Smithfield, Virginia 23430 | Same objection as for Michele Brink |
| 3. | Diane McQueen<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Same objection as for Michele Brink |

Reserved

| NO. | WITNESSES | OBJECTIONS |
|---|---|---|
| 4. | Pamela Orie<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Same objection as for Michele Brink |
| 5. | Louis Frazier<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Same objection as for Michele Brink |
| 6. | Yvonne Solomon | Same objection as for Michele Brink |
| 7. | Monica Brandon | Same objection as for Michele Brink |
| 8. | Dr. Anthony Bradford<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Object only to following extent that testimony is necessarily limited or excluded pursuant to the Defendant's second motion in limine (Part III A) |
| 9. | Marci Ajayi<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Same objection as for Michele Brink |

Reserved

Witnesses who may testify:

| NO. | WITNESSES | OBJECTIONS |
|---|---|---|
| 10. | Mary Spriggs<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Same objection as for Michele Brink |
| 11. | John Havrilla | Object only to the extent that testimony is necessarily limited or excluded pursuant to the Defendant's second motion in limine (Part III A) |

Reserved

3. (b) **The names and addresses of the witnesses who will or may testify in person or by deposition at the instance of Defendant, are as follows. Plaintiff's objections (if any) to these witnesses are so noted.**

Witnesses who will testify:

| NO. | WITNESSES | OBJECTIONS |
|---|---|---|
| **1.** | Marci Ajayi<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |
| **2.** | Vickie Appelwhite<br>109 #A Roane Drive<br>Hampton, VA 23669 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |
| **3.** | Dr. Anthony Bradford<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |
| **4.** | Monica Brandon<br>2 Springwood Place<br>Hampton, VA, 23666 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |
| **5.** | Lewis Frazier<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |
| **6.** | Diane McQueen<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |
| **7.** | Pamela Orie<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |

Reserved

| NO. | WITNESSES | OBJECTIONS |
|---|---|---|
| **8.** | DeAnne Seekins<br>Durham VA Medical Center<br>508 Fulton Street<br>Durham, NC 27705 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |
| **9.** | Yvonne Solomon<br>7 Dornock Court<br>Hampton, VA 23666 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |
| **10.** | Shedale Tindall<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |




Witnesses who may testify:

| NO. | WITNESSES | OBJECTIONS |
|---|---|---|
| **1.** | Matthew Hayes<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |
| **2.** | Laurie Marino<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |
| **3.** | Barbara May<br>16 Barron Drive<br>Hampton, VA 23669<br>726-2220 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |
| **4.** | Deborah McCallum<br>Department of Veterans Affairs<br>Office of General Counsel<br>Washington DC. | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |
| **5.** | Yolanda Prince<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |

| | | |
|---|---|---|
| 6. | Ruby Shepherd<br>Human Resources Department, Ft. Eustis | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |
| 7. | Leon Walker<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |
| 8. | Karen Wright<br>c/o VA Medical Center<br>100 Emancipation Drive<br>Hampton, VA 23667 | Plaintiff objects only to the extent the testimony constitutes hearsay, is irrelevant, lacks foundation or is otherwise inadmissible. |

Reserved

In addition to those listed, Defendant may call any witnesses identified by Plaintiff.

Defendant reserves the right to use additional witnesses for the purposes of impeachment or rebuttal.

**4. (a) The factual contentions of Plaintiff follow.**

The factual contentions asserted in Plaintiff's Complaint are incorporated herein by reference. Plaintiff's factual contentions are summarized below:

*Hostile Environment*

1. Brink was subjected to intense, frequent and pervasive acts of racial harassment which started a short period after her assignment to Telecare.

2. Upon being placed in the Telecare position Brink was informed by the president of the union that the ladies in Telecare did not want her there.

3. It was apparent to Brink from the beginning of her assignment to Telecare that she was indeed not wanted. Her colleagues would completely ignore her or mock her by laughing in her face at something that was not intended to be funny.

4. The Telecare workspace was kept locked. Brink did not initially have a key to the locked Telecare workroom. Even later she would sometimes leave the Telecare work room without her key. She would often have to wait a protracted amount of time

before one of her colleagues would open the door. Some of her colleagues thought this was funny.

5. One of the coworkers in particular, Diane McQueen, was more aggressive than the others and would be far more confrontational.

6. In approximately the late spring or early summer of 2009, McQueen began making overtly racial statements in the workplace.

7. Yvonne Solomon and Monica Brandon followed suit, though to a lesser degree.

8. The Telecare workplace was small, and could accommodate only six work stations. Working in close proximity to one another, the workers in Telecare wore wireless headsets that covered only one ear. This allowed the Telecare workers to speak with each other during times in which they were not fielding calls from veterans.

9. On some occasions when speaking directly to Brink, and frequently when speaking about Brink, Diane McQueen would refer to her as "white girl". Even when McQueen was not directly addressing Brink as "white girl" it was not difficult for Brink to overhear the phrase when McQueen addressed Brink as "white girl" to their colleagues. Solomon and Brandon also referred to Brink as "white girl" from time to time. These references were meant to demean and humiliate Brink.

10. Brink's coworkers in Telecare often listened to the Tom Joyner radio show. Tom Joyner is an African American. He frequently discusses racially sensitive topics and discrimination against blacks. This and other factors would often engender discussion of racial topics among Brink's coworkers.

11. Brink's coworkers frequently discussed stories from the news media, politics and American history in which blacks were treated in an offensive and/or demeaning way. Brink's coworkers in Telecare almost uniformly took the view that blacks were unfairly discriminated against and oppressed in modern American society. Specific topics included the Michael Vick situation, blacks being jailed unfairly, police officer violence against blacks, the O.J. Simpson trial, etc. These discussions were often intended by Brink's colleagues to make her uncomfortable and to humiliate her.

12. On other occasions Brink was subjected to stories about white atrocities in American history including stories about the KKK, segregation and historical acts of

discrimination in the country's past. These discussions were often intended by Brink's colleagues to make her uncomfortable and to humiliate her.

13. Brink's colleagues in Telecare sometimes brought up the topic of black men dating white women. The primary view expressed in the group was that this should not occur. These discussions were intended by Brink's colleagues to make her uncomfortable and to humiliate her.

14. Brink was also subjected to acts of assault and battery. Early in her employment, Diane McQueen used her hands to forcibly shut Brink's mouth. Later, during a dispute that occurred shortly after Brink's coworkers learned of her racial harassment complaints, Brandon threateningly jabbed her fingers at Brink while falsely accusing her of and reporting her for being late.

15. In late May of 2012, on the day Yvonne Solomon was to have an office retirement celebration, Diane McQueen went to reserve a room for the event. Some white employees informed her that the room was already taken. When McQueen got back to Telecare she made a comment to the effect of "the white people of the KKK" get it all or get what they want. Brink challenged her by saying that it was an inappropriate statement. McQueen advanced on Brink shouting at her. Brink was genuinely in fear that McQueen might assault her. McQueen admits referencing the "KKK", losing control during this episode and telling Brink "you are lower than the dirt beneath my feet" and "you are no Christian."

*HVAMC'S Harassment Policies*

16. The Secretary of the Department of Veterans Affairs issued their workplace harassment policy statement applicable to HVAMC in the summer of 2013.

17. The policy statement contains the workplace harassment policy that applies to HVAMC and its employees. It appears at page 2 of the policy statement. The policy statement gives employees significant flexibility in how to address workplace harassment. It states:

> Supervisors and employees bear responsibility in maintaining a work environment free from discrimination and harassment. Employees must not engage in harassing conduct and should immediately report such conduct to their supervisor, another management official, collective bargaining unit, Employee Relations (ER), labor relations (LR) specialists, or ORM, as appropriate. If an employee brings an issue of harassment to a

supervisor's attention, the supervisor must promptly investigate the matter and take appropriate and effective corrective action.

*Brink's Reporting of Racial Harassment and Management's Response*

18. In the early fall of 2011, Brink made various attempts to obtain a meeting with her immediate supervisor, Pamela Orie. The meeting occurred at the end of October. Brink believes it may have been October 28, although she cannot identify the precise day of the meeting. In the late October meeting, Brink informed Orie about workplace discussions of lynchings, the KKK, the oppression of blacks, inappropriate conversations regarding black men dating white women and complained to her about being called "white girl". She told Orie that she wanted it to stop. Orie left Brink with the distinct impression that remedial action would promptly be taken.

19. HVAMC denies in footnote 6, at page 9 of their memorandum, that Orie and Brink met in October of 2011. They assert that, other than self-serving statements, Brink is unable to produce any document or record corroborating that the meeting ever occurred. Plainly, Brink's email of October 19, 2011 requests a meeting with Orie. In addition, Brink reports the meeting and her concern about an adverse consequence, to her EAP counselor, Dr. Bradford, in an email dated October 31, 2011. She discusses the email again in an email to Dr. Elliott on November 3, 2011.

20. On Friday, March 2, 2012, after workplace racial tension had again reached a peak, Brink again went to Orie to complain. On this occasion Brink again related to Orie the same information she had provided to her in their late October, 2011, meeting. Orie admits that on March 2, 2012, Brink complained that she had been referred to by her coworkers as "white girl" while in Telecare.

21. Brink's first level supervisor, Orie, and her second level supervisor, Frazier, claim to have commenced a fact finding investigation concerning Brink's allegations within one week of her March 2 complaints to Orie. Frazier testified under oath to Investigator Schilling as follows:

Q. And you did a fact finding?

A. Yes, sir.

Q. So what were the results of your fact finding?

A. The fact finding was I did not – I couldn't confirm that she had actually been referred to as a white girl. The only racial – the only racial disparity that I could find was there was a picture of President Obama holding hands with Michelle Obama, and

because it was an election year, I had to remove the poster because it wasn't an official sign for the President.

Q. Right. So that really – so is that all that came of the fact finding?

A. Yes, sir.

22. Frazier's testimony caused Investigator Schilling to report as follows in his investigation: "According to Ms. Orie, Mr. Frazier and Ms. Tindall, none of these managers learned of Complainant's assertions of racial tension and hostile treatment until March of 2012. Within a week of her making these assertions, Mr. Frazier conducted a fact finding. He was not able to establish that Complainant had been referred to as 'white girl' by her coworkers. . . ." Someone would merely have had to ask them to determine that, but no one did.

23. Orie concedes that no later than March 2, 2012, Brink complained to her of being called "white girl" by her colleagues in the Telecare unit and "unloaded" on Orie the afternoon of March 2, 2012. The sum and substance of Frazier's and Orie's reactions to Brink's complaints are found at Frazier Dep. pp. 27-30, 39-46 and Orie Dep. pp. 7-18. No member of HVAMC management ever conducted a fact finding investigation. Contrary to the implications conveyed to the EEO Investigator that a meaningful investigation had been performed, not one of the merely five Telecare coworkers had ever been asked if they had ever referred to Brink as "white girl" or whether they had ever heard anyone else refer to her as "white girl". This is plain from the following deposition testimony:

a) Frazier admits that neither he nor Orie ever asked anyone whether Brink had ever been referred to as "white girl";

b) Frazier never inquired of Orie or anyone else whether Orie learned of Brink's allegations prior to March 2, 2012;

c) Frazier never inquired of anyone whether inappropriate racial topics were ever discussed in front of Brink in Telecare;

d) Orie never asked anyone in Telecare whether anyone had ever referred to Brink as "white girl";

e) No later than early March of 2012, Frazier knew that Brink was complaining of being called "white girl" and being racially harassed in the workplace;

f) The only affirmative investigative act taken by HVAMC management, other than accepting Brink's emails and discussing the matter with her, was Orie's sending an oblique Report of Contact form ("ROC") to the workers in Telecare;

g) The ROC request was vague;

h) Brink and her colleagues did not know what the ROC was about or what they were to do with it;

i) The ROC form itself is designed only to memorialize contacts with veterans;

j) The ROC form states at the top and in italics "NOTE: AS APPROPRIATE, ONCE THIS FORM IS COMPLETED IT BECOMES A PERMANENT RECORD IN THE VETERANS FOLDER";

k) The ROC form asks for "LAST NAME – FIRST NAME – MIDDLE NAME OF VETERAN" and the "ADDRESS OF VETERAN", it asks for no other names;

l) At the bottom of the ROC form VA addressees are instructed "NOTE: DELETE AFTER READING . . . .";

m) The ROC and accompanying email request were so generic and incongruous they prompted Marcy Ajayi to send an inquiry to Orie about their purpose,; the email asserts to Orie that Ajayi has much to report;

n) Orie never responded to Ajayi;

o) All of the Telecare workers appear to have been confused about the purpose of the ROC as none of them replied to it;

p) The Telecare workers were informed that filling out the ROC was optional.

24. It is clear that no Telecare coworker of Brink's was ever interviewed about Brink's complaints. No one was ever asked whether Brink was called "white girl". Orie explains their failure to interview individual employees on the primary subjects by saying "our method of communication is to do the fact finding and go through AFGE."

25. Orie then admits that by "fact finding" she meant sending the ROC form. She concedes that the employees could either choose to respond to the ROC form or choose not to respond.

26. On Friday, March 2, 2012, Brink wrote Orie an email. She complained of work-place tension and hostility between Brink and several coworkers. She states at the end that she is making a "final attempt to resolve this tension by requesting mediation through your assistance."

27. It was Brink's desire to have management address her workplace harassment complaint as was her right under the policy and applicable law. She did not want to be forced to file an EEO complaint.

28. On Tuesday, March 6, 2012, Brink wrote an email to several HVAMC management and human resources officials. In the March 6 correspondence she complains of racial slurs, being subjected to racial comments that have no place in a federal government building and other inappropriate conduct.

29. Maritza O'Neal sent an email to Brink on March 6, 2012 telling her that she had the option of using another EEO office for filing her complaint if that was her desire. It was not Brink's intent as of March 6 to have her only option to be filing an EEO complaint. It was her desire to have her racial hostile environment issues resolved by management, not through an EEO complaint.

30. HVAMC forced the EEO process on Brink. The policy gave her the right to have HVAMC management investigate and address her complaints of harassment. When she wrote her email of Monday, March 5, 2012 stating that she was not going through the EEO process via HVAMC, she was referring to the EEO charge filing process. She was not referring to her right to have the matter investigated by HVAMC management.

31. In early March, 2012, HVAMC offered to move Brink from her then current work area. She declined the request because HVAMC was going through significant transition. She knew there was going to be a realignment of the HVAMC nursing team, and was concerned that if she worked in another area it would be easier to transfer her out of the Telecare.

32. On Wednesday, March 14, 2012, Brink wrote an email to several members of HVAMC management and other officials. In this email she expressly responded to management's request that she memorialize her complaints of racial harassment in writing.

33. After sending the email to HVAMC management, Brink never received any response. There was no response that it was inadequate or insufficient to start the investigative process as now asserted in HVAMC's memorandum.

34. In April of 2012, Brink wrote an email to her supervisors and other members of HVAMC management. In the email, she complains in part about an incident in which a coworker, Monica Brandon, was accusing her of being late.

35. The conflicts with Monica Brandon over Brink purportedly being late only began after Brink raised her complaints of racial harassment with HVAMC management.

36. On Friday, May 4, 2012, Brink sent an email to her supervisors and other members of HVAMC management. In the email she complains of acts of racial harassment that occurred in late April and early May and were the same types of complaints related to Orie in October of 2011 and to several members of HVAMC management in March of 2012.

37. In very late May, 2012, the most disturbing act of racial harassment occurred when Diane McQueen returned to the Telecare work area, apparently frustrated because white colleagues had reserved a conference room she wanted, stating that the "white KKK get everything they want," and Brink told her it was inappropriate. McQueen admitted that she lost control on that occasion. She advanced upon Brink yelling at her that she was "lower than the dirt beneath my feet" and "not a Christian". Brink went immediately to her supervisors to bring the incident to their attention. McQueen then alternately, and cynically, claimed that by "KKK" she meant kinder kare or kids kicking, but did not come up with a coherent explanation for the third K. Her explanation was obviously a lie.

38. In August of 2012, Brink was transferred to an undesirable position as a Nurse Navigator as a result of her complaints. She had wanted to stay in Telecare and have the harassing conduct stopped. She enjoyed the Telecare work far more than the work associated with her current position.

39. Brink filed her administrative charge of discrimination on or before April 20, 2012.

**4. (a) The factual contentions of Defendant follow:**

(1) On September 5, 2006, Plaintiff was appointed to a position as a registered nurse at the Hampton VA Medical Center and, on December 22, 2008, was detailed to the Telecare Nurse Group unit (Telecare) as an accommodation. Plaintiff remained in Telecare until August 25, 2012. All of Plaintiff's co-workers were African-American. Plaintiff claims her co-workers displayed open hostility to her from the start, with overt racial harassment by co-workers Dianne McQueen, Yvonne Solomon and Monica Brandon beginning in Spring 2009.

(2) Even assuming Plaintiff subjectively perceived the workplace dynamics with her co-workers as unwelcome, Plaintiff cannot show by a preponderance of the evidence that the conduct complained of occurred because of her race, was objectively pervasive or severe, or that there is a basis for imputing liability to the Defendant. To the extent Plaintiff also contends that one of her co-workers (Solomon) was a supervisor (which is denied), the Defendant prevails because it exercised reasonable care to prevent and correct promptly harassing behavior, and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the Hampton VA, or to otherwise avoid harm.

(3) Plaintiff alleges she was assaulted while in Telecare on two occasions, once in early 2009, and again in early 2012. This allegation lacks credibility. Despite the small space of the Telecare unit, no other employee witnessed this conduct. Moreover,

Plaintiff did not tell anyone about these purported assaults, and the allegations surfaced for the first time only after Plaintiff filed her lawsuit.

(4) Plaintiff alleges that she was referred to as "white girl" while in Telecare. Defendant acknowledges one of Plaintiff's co-workers (McQueen) used the term "white girl" in the workplace in reference to Plaintiff, but the term was not used frequently and was not intended by the co-worker to harass Plaintiff. Moreover, Plaintiff did not tell management officials about this for years, and when she did, would not tell management who had called her "white girl." Even in combination with Plaintiff's other complaints, this conduct does not rise to the extreme level of severe and pervasive conduct required to support a hostile work environment.

(5) Plaintiff alleges that racial conversations occurred in the workplace. Defendant does not dispute that, from time to time, there were conversations in the workplace that touched on race and race relations in society, usually based on events that may have been in the news. (Plaintiff brought the newspaper to work most days, and would also bring up topics in the news for conversation.) Not only did Plaintiff occasionally participate in these conversations, at no time did Plaintiff ever tell her co-workers that the conversations she overheard were not welcome or that they offended her. Moreover, Plaintiff did not tell management officials about these purportedly harassing conversations for years. Even in combination with Plaintiff's other complaints, this conduct does not rise to the extreme level of severe and pervasive conduct required to support a hostile work environment.

(6) Plaintiff alleges that racially charged articles were placed on her desk or sent via email by her co-workers. This allegation lacks credibility. Plaintiff can only identify one article that was purportedly given to her in January 2012, but Plaintiff never provided this article to management or the EEO investigators, and it only first surfaced after Plaintiff had filed her lawsuit. Even in combination with Plaintiff's other complaints, this conduct does not rise to the extreme level of severe and pervasive conduct required to support a hostile work environment.

(7) Hampton VA policies provide, among other things, that employees complaining of workplace harassment should report that harassment immediately, and they provide an employee multiple avenues by which to do so, including the employee's supervisory chain, a Union representative, and through the EEO process. Plaintiff was fully aware of these policies, complained to her Union about other matters with some regularity, and had utilized the EEO process to complain of race discrimination twice in 2008 before she got to Telecare. Plaintiff failed to report anything about purported racial harassment in Telecare to anyone for approximately three years. Plaintiff's substantial and unreasonable delay in reporting her

allegations, contrary to the policies she was aware of, supports a conclusion that any conduct that did occur was not subjectively or objectively severe and pervasive.

(8) The first time Hampton VA management had knowledge of Plaintiff's allegations is when she met with her immediate supervisor on March 2, 2012. (Any assertion that Plaintiff met with her supervisor prior to that time is not supported by the evidence.) At that time, Plaintiff complained of several issues she had, none of which had anything to do with the Telecare environment, and also complained of being called "white girl" in Telecare. Plaintiff would not identify who had called her "white girl" and did not disclose any other information about purported racial harassment in the workplace.

(9) Hampton VA management took reasonable steps thereafter to address Plaintiff's concerns. Plaintiff was referred to the Hampton VA's EEO office, but she refused to pursue an EEO claim through that office, and also declined mediation with her co-workers. Plaintiff was asked on three separate occasions, March 5, 2012, March 9, 2012 and March 15, 2012, to provide a written statement detailing her allegations, but she would not do so, relying only on vague, non-specific allegations of racial tension. In addition, following a meeting on March 9, 2012, which included high-ranking Hampton VA management officials, Plaintiff was offered the opportunity to perform her same duties with the same hours from another location, but she refused this opportunity, choosing instead to remain in Telecare.

(10) Plaintiff never provided a written statement providing details of who did what in Telecare between 2009 and early 2012. When Plaintiff did make specific complaints after that time about other discrete events, they were promptly addressed by management.

(11) Plaintiff may rely on a theory that one of her co-workers (Solomon) was a supervisor, but the facts do not support this contention. Solomon, although a senior nurse in Telecare, was not, as a matter of law, a supervisor and had no power or authority to take tangible employment actions against Plaintiff. Even if Solomon is deemed to be a supervisor, because Plaintiff did not suffer a tangible employment action when she transferred from Telecare in August 2012, Defendant is entitled to the affirmative defense set forth in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

(12) The Hampton VA's institution of anti-harassment policies – that, among other things, provided Plaintiff multiple avenues by which to report harassment – coupled with the offer to relocate Plaintiff and refer her to the EEO establish as a matter of law that the Hampton VA exercised reasonable care in preventing and promptly correcting harassment, thereby satisfying the first element of the *Faragher* defense.

(13) Plaintiff's delay of approximately three years before reporting alleged harassment was patently unreasonable as a matter of law. Plaintiff's fear of retaliation is insufficient as a matter of law to excuse this delay. These facts satisfy the second element of the *Faragher* defense.

**5. (a) The triable issues as contended by Plaintiff follow.**

(1) Whether Plaintiff was subjected to racial harassment and a hostile work environment in violation of Title VII;

(2) Whether Defendant is liable for the conduct and acts, i.e., the racial harassment and hostile work environment, to which Plaintiff was subjected;

(3) Whether Plaintiff suffered damages because of the racial harassment and hostile work environment to which she was subjected, and, if so, the amount of the damages sustained by Plaintiff.

**5. (b) The triable issues as contended by Defendant follow.**

(1) Was Plaintiff harassed in Telecare because she was white?

(2) Was the conduct unwelcome?

(3) Was the conduct objectively severe and pervasive?

(4) Is there a basis for imputing liability against the Defendant?

(5) If applicable, did Defendant exercise reasonable care to prevent and correct any harassing behavior, and did Plaintiff unreasonably fail to take advantage of any preventive or corrective opportunities provided by the Hampton VA or fail to otherwise avoid harm (*Faragher* defense)?

(6) If the Defendant is liable, is Plaintiff entitled to more than nominal damages?

(7) If Plaintiff is entitled to more than nominal damages, what are the reasonable damages Plaintiff should receive to compensate her for pain, suffering and mental anguish for conduct occurring within the time period defined by the Court?

Lawrence R. Leonard
United States Magistrate Judge

At Norfolk, Virginia
This 1st day of April, 2015

WE ASK FOR THIS:

MICHELE BRINK,
Plaintiff

By:

James H. Shoemaker, VSB #33148
Jason E. Messersmith VSB #77075
PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.
Counsel for Plaintiff
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Tel: (757) 223-4500
Fax: (757) 223-4518
jshoemaker@pwhd.com
jmessersmith@pwhd.com

ROBERT A. McDONALD, Secretary
of Veterans Affairs,
Defendant

By:

Kent P. Porter, VSB #22853
Daniel P. Shean, VSB 84432
Assistant United States Attorneys
Counsel for the Federal Defendant
8000 World Trade Center
101 W. Main Street
Norfolk, Virginia 23510
Tel: (757) 441-6331
Fax: (757) 441-6689
Kent.porter@usdoj.gov
Daniel.Shean@usdoj.gov