UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division



MICHELE BRINK,

    Plaintiff,

v.                                  Civil Action No.: 4:14cv24

ROBERT A. McDONALD,
Secretary of Veterans
Affairs,

    Defendant.

## OPINION AND ORDER

This matter is before the Court on a motion for summary judgment, ECF No. 24, filed on March 2, 2015, and a motion in limine, ECF No. 35, filed on March 24, 2015, by Robert A. McDonald ("Defendant").[1] In his motion in limine, Defendant seeks a pre-trial ruling regarding the supervisory status of Yvonne Solomon and contends that Ms. Solomon was a coworker, rather than a supervisor, of Michele Brink ("Plaintiff"). Mem. Supp. Def.'s Mot. in Limine at 1, ECF No. 36. In response, Plaintiff has conceded that "Yvonne Solomon should be deemed a co-worker . . . for all purposes related to this matter." Pl.'s Resp. to Mot. in Limine at 1, ECF No. 43. Therefore, the Court **GRANTS** Defendant's motion in limine and holds that Ms. Solomon

---

[1] Also pending before the Court are two other motions in limine filed by Defendant. ECF Nos. 38, 40. The Court will resolve such motions by separate order.

must be considered Plaintiff's coworker, rather than her supervisor, for all purposes in this matter.

Thus, in light of Plaintiff's concession, the Court need only consider, in detail, Defendant's motion for summary judgment. After examining the briefs and the record, the Court determines that oral argument is unnecessary because the facts and legal contentions are adequately presented and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J).

## I. FACTUAL AND PROCEDURAL HISTORY[2]

On September 5, 2006, Plaintiff accepted an appointment to a position as a registered nurse at the Hampton, Virginia, Veterans Affairs Medical Center ("HVAMC"). Pl.'s Resp. to Def.'s First Req. for Admis. at 4, ECF No. 25-1. In December 2008, Plaintiff was detailed to HVAMC's Telecare Nurse Group Unit ("Telecare") as a temporary accommodation for certain medical limitations. Id. at 5. Thereafter, on February 13, 2009, Plaintiff was formally assigned to the Telecare position. Id.

From the beginning of Plaintiff's assignment to Telecare, it was apparent to Plaintiff that her colleagues in Telecare did

---

[2] In his motion for summary judgment, Defendant does not contest Plaintiff's substantive allegations of harassment. Thus, the Court only sets forth the facts relevant to the issues raised in Defendant's motion for summary judgment.

not want Plaintiff to work in the Telecare position. Michele Brink Decl. ¶ 4, ECF No. 28-1. Moreover, "upon being placed in the Telecare position," the president of the local union informed Plaintiff "that the ladies in Telecare did not want [Plaintiff] there." Id. ¶ 3. The Telecare workspace was kept locked and, initially, Plaintiff did not have a key to the workspace. Id. ¶ 5. Despite her knocks on the door to the Telecare unit, Plaintiff's colleagues would sometimes wait a long period of time before opening the door to let Plaintiff into the workspace. Id.

By late Spring or early Summer 2009, Dianne McQueen, Plaintiff's coworker, began overtly harassing Plaintiff based on Plaintiff's race. Id. ¶ 8. Two other coworkers, Yvonne Solomon and Monica Brandon, then joined in harassing Plaintiff, though to a lesser degree. Id. ¶ 9. The overt racial harassment was "'intense,' 'deeply offensive' and occurred frequently (if not daily) and routinely." Def.'s Mem. Supp. Mot. for Summ. J. at 3 (quoting Compl. ¶ 12-14, 28, ECF No. 1); accord Pl.'s Mem. Opp'n Mot. for Summ. J. at 3 (admitting such assertion). The harassment to which McQueen, Solomon, and Brandon subjected Plaintiff was "so severe that, from the beginning she went home and talked almost every night with her husband, who often recommended that she report the issues to a supervisor." Def.'s Mem. Supp. Mot. for Summ. J. at 3 (citing Kevin Brink Dep. at

30-31, 35, 40, 43, ECF No. 25-4); accord Pl.'s Mem. Opp'n Mot. for Summ. J. at 3 (admitting such assertion).  In addition, Plaintiff "sought out counselling through the Hampton VA's Employee Assistance Program" because of the harassment.  Def.'s Mem. Supp. Mot. for Summ. J. at 3 (citing Michele Brink Dep. at 31-33, ECF No. 25-3); accord Pl.'s Mem. Opp'n Mot. for Summ. J. at 3 (admitting such assertion).  However, Plaintiff "did not say anything to a supervisor or manager about the purported racial harassment for well over two years."  Def.'s Mem. Supp. Mot. for Summ. J. at 3 (citing Pl.'s Resp. to Interrog. 7, ECF No. 25-2); accord Pl.'s Mem. Opp'n Mot. for Summ. J. at 3 (admitting such assertion).

In October 2011, Plaintiff made her first complaint about the alleged harassment to a supervisor, Pamela Orie.[3]  After making various attempts to meet with Ms. Orie in early fall

---

[3] Defendant has presented evidence to contradict Plaintiff's evidence that she complained to Ms. Orie in October 2011. For example, Defendant offers a declaration from Ms. Orie in which Ms. Orie denies meeting with Plaintiff about supposed racial issues in October 2011 or any time prior to March 2, 2012. Orie Decl. ¶ 14, ECF No. 25-8.  Contrary to Defendant's assertion that Plaintiff has failed to "offer some hard evidence showing that [her] version of the events is not wholly fanciful," Def.'s Reply Supp. Mot. for Summ. J. at 3, ECF No. 33 (internal quotation marks and citation omitted), Plaintiff's sworn declaration directly disputes Defendant's evidence about the first report of alleged harassment, and therefore creates a genuine dispute as to when Plaintiff first met with Ms. Orie regarding her allegations of racial harassment.  In resolving the instant motion, the Court cannot weigh the evidence or make credibility determinations.  Jacobs v. N.C. Administrative Office of the Courts, __ F.3d __, No. 13-2212, 2015 WL 1062673, at *4 (4th Cir. Mar. 12, 2015).  Thus, the Court has described any genuinely disputed facts in a light most favorable to Plaintiff, the non-moving party.  Id.

2011, Ms. Orie and Plaintiff met at the end of October 2011, on what Plaintiff believes to have been October 28, 2011. M. Brink Decl. ¶¶ 17-18, ECF No. 28-1. In her meeting with Ms. Orie, Plaintiff informed her about workplace discussions involving "lynchings, the KKK, the oppression of blacks, inappropriate conversations regarding black men dating white women" and "complained to her about being called 'white girl.'" Id. ¶ 18. On October 31, 2011 and November 3, 2011, Plaintiff sent emails, respectively, to Dr. Anthony Bradford and Dr. Sheila Elliott that referenced Plaintiff's meeting with Ms. Orie. See ECF Nos. 28-8, 28-9.

Plaintiff next complained to Ms. Orie on March 2, 2012. M. Brink Decl. ¶ 22. During her meeting with Ms. Orie, Plaintiff relayed the same information that she had provided to Ms. Orie in the October 2011 meeting. Id. Also, in a March 2, 2012 email from Plaintiff to Ms. Orie, Lewis Frazier—Plaintiff's second-level supervisor—and Dr. Elliott, Plaintiff indicated that "tension and hostility has been present for a long time" in Plaintiff's workplace, that she believed that "it is partially motivated by factors that are protected by EEOC regulations," and that she was "making a final attempt to resolve this tension by requesting mediation through your assistance." ECF No. 28-11. In response to Plaintiff's complaint, Ms. Orie sent out blank "report of contact" forms to Plaintiff and her coworkers

5

in an attempt to conduct fact-finding regarding Plaintiff's allegations. Orie Dep. 15, ECF No. 28-15; ECF No. 28-16 (March 5, 2012 email from Ms. Orie to Plaintiff and her coworkers indicating that "attached is the Report of Contact form to document any concerns (past or present) you may have."). Thereafter, Plaintiff's supervisors had additional meetings with Plaintiff and engaged in additional email correspondence.[4] On April 20, 2012, Plaintiff filed a formal charge of discrimination. ECF No. 28-27. In August 2012, Plaintiff was reassigned to a position as a Nurse Navigator at HVAMC, which is her current position at HVAMC. See Brink Decl. ¶ 29.

On February 28, 2014, Plaintiff filed this Title VII employment discrimination action. Compl., ECF No. 1. Plaintiff initially asserted causes of action under Title VII for: (I) harassment based on race; (II) disparate treatment based on race; and (III) retaliation. See id. ¶¶ 27, 31, 34. However, on February 6, 2015, Plaintiff voluntarily dismissed with prejudice her disparate treatment and retaliation claims. ECF

---

[4] Plaintiff challenges the sufficiency of the investigation following her March 2, 2012 complaint to Ms. Orie. Both parties have submitted substantial evidence regarding events following Plaintiff's March 2, 2012 complaint. However, the Court does not set forth any further details of such investigation because they are not relevant to Defendant's laches defense—the only remaining defense asserted in Defendant's summary judgment motion. See Notice, ECF No. 48. For the same reason, the Court does not set forth any facts relating to harassment that occurred subsequent to Plaintiff's March 2, 2012 complaint.

No. 21. Thus, only Plaintiff's harassment claim remains at issue in this matter.

On February 17, 2015, Defendant took Plaintiff's deposition. M. Brink Dep., ECF No. 25-3. During the deposition, Defendant's counsel questioned Plaintiff concerning the specifics of her racial harassment allegations, including allegations concerning conversations about O.J. Simpson, lynchings, African-American men dating Caucasian women, and the KKK. Id. at 98, 176, 185, 195. In response, Plaintiff could not recall what prompted the conversation about O.J. Simpson. Id. at 98, 185. Similarly, Plaintiff could not quantify the number of times in which conversations about lynchings occurred, but could "say when it was worse" and that "it was persistent." Id. at 176. In addition, Plaintiff could not establish the frequency of conversations about African-American men dating Caucasian women because "that was two and a half, three years ago;" however, Plaintiff stated that "it occurred throughout." Id. at 195. Regarding conversations about the KKK, Plaintiff could not provide a quantitative number as to the frequency of such conversations because "that was almost three years ago, two and a half years ago," but stated that such conversations were "consistent in terms of their constantly talking about and barraging me with these things . . . at times it was worse than others, but it was always there." Id. at 199. Finally,

although Plaintiff has alleged that her coworkers left "stories about racial occurrences" at her work station, Compl. ¶ 13, in her deposition, Plaintiff could only identify one article that a coworker left on her desk and that she considered to be racially hostile or harassing, M. Brink Dep. at 214.

On March 2, 2015, Defendant filed the instant motion for summary judgment. ECF No. 24. Therein, Defendant asserts that, regardless of the validity of Plaintiff's hostile work environment allegations, he is entitled to summary judgment based on two affirmative defenses: (1) the defense established by Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) (the "Faragher/Ellerth defense"); and (2) laches. Def.'s Mem. Supp. Mot. for Summ. J. at 13. On March 19, 2015, Plaintiff filed her response in opposition to Defendant's motion. On March 24, 2015, Defendant filed his reply. Def.'s Reply Supp. Mot. for Summ. J., ECF No. 33. On April 10, 2015, Defendant withdrew his summary judgment motion with respect to the Faragher/Ellerth defense. Notice, ECF No. 48. Accordingly, the matter is now ripe for disposition.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a district court shall grant summary judgment in favor of a movant if such party "shows that there is no genuine dispute as to any

8

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 247-48 (1986). A fact is "material" if it "might affect the outcome of the suit," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> at 248.

If a movant has properly advanced evidence supporting entry of summary judgment, the non-moving party may not rest upon the mere allegations of the pleadings, but instead must set forth specific facts in the form of exhibits, sworn statements, or other materials that illustrate a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986); Fed. R. Civ. P. 56(c). At that point, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249. In doing so, the judge must construe the facts and all "justifiable inferences" in the light most favorable to the non-moving party, and the judge may not make credibility determinations. <u>Id.</u> at 255; <u>T-Mobile Ne. LLC v. City Council</u>, 674 F.3d 380, 385 (4th Cir. 2012).

9

## III. DISCUSSION

Defendant originally asserted that he is entitled to summary judgment based on two defenses: (1) the Faragher/Ellerth defense; and (2) laches. However, in light of Plaintiff's concession that this case only involves coworker harassment, Defendant subsequently withdrew his motion as to the Faragher/Ellerth defense applicable to claims involving supervisory actions. Notice, ECF No. 48. Therefore, the Court need only consider whether Defendant is entitled to summary judgment on the issue of laches.

A defendant in a Title VII action may assert the equitable defense of laches as a bar to a plaintiff's claim. The defense of laches "'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 121-22 (2002) (quoting Kansas v. Colorado, 514 U.S. 673, 687 (1995)). "The first element of laches, lack of diligence, is satisfied where a plaintiff has unreasonably delayed in pursuing his claim." EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 409 (4th Cir. 2005) (citing White v. Daniel, 909 F.2d 99, 102 (4th Cir. 1990)). Regarding lack of diligence, there is no per se rule establishing when a plaintiff's delay in pursuing her claim becomes unreasonable. See EEOC v. Propak Logistics, Inc., 884 F. Supp. 2d 433, 441 (W.D.N.C. 2012)

(citation omitted); U.S. EEOC v. Lockheed Martin Global Telecomm., Inc., 514 F. Supp. 2d 797, 801 (D. Md. 2007) (citations omitted); cf. Pruitt v. City of Chicago, 472 F.3d 925, 928 (7th Cir. 2006) (Easterbrook, C.J.) (observing, regarding delay, that "'[h]ow much is too much' may be a difficult assessment in many cases . . ."). However, "in general the decision to apply the doctrine of laches lies on a sliding scale: the longer the plaintiff delays in filing her claim, the less prejudice the defendant must show in order to defend on laches." Smith v. Caterpillar, Inc., 338 F.3d 730, 734 (7th Cir. 2003) (citations omitted). As to the second element, "[p]rejudice is demonstrated by a disadvantage in asserting or establishing a claimed right, or some other harm caused by detrimental reliance on the plaintiff's conduct." Lockheed, 514 F. Supp. 2d at 803 (citing Daniel, 909 F.2 at 102). "'Classic elements of undue prejudice include unavailability of witnesses, changed personnel, and the loss of pertinent records.'" Id. (quoting EEOC v. Dresser Indus., Inc., 668 F.2d 1199, 1203 (11th Cir. 1982)). In addition, in assessing prejudice, courts will consider whether key witnesses' memories have faded. See Smith, 338 F.3d at 734-35 & n.5; Propak, 884 F. Supp. 2d at 444 (citations omitted); Lockheed, 514 F. Supp. 2d at 805 (citations omitted).

As an initial matter, before turning to the merits of Defendant's laches defense, the Court will assess Plaintiff's contention that Defendant has waived such defense by failing to include it in his answer. The Federal Rules of Civil Procedure provide that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ." Fed. R. Civ. P. (8)(c). However,

> [a]lthough it is indisputably the general rule that a party's failure to raise an affirmative defense in the appropriate pleading results in waiver, there is ample authority in this Circuit for the proposition that absent unfair surprise or prejudice to the plaintiff, a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive motion . . . .

Brinkley v. Harbour Recreation Club, 180 F.3d 598, 612 (4th Cir. 1999) (internal citations omitted). Therefore, in considering an affirmative defense first raised in a pre-trial dispositive motion, a court will not find waiver "unless the failure to plead resulted in unfair surprise or prejudice." See S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co., 353 F.3d 367, 373 (4th Cir. 2003) (citing Brinkley, 180 F.3d at 612-13); see also 5 Charles Alan Wright & Arthur R. Miller, et al., Federal Practice & Procedure § 1278 (3d ed. 2004 & Supp. 2014).

Having carefully considered Plaintiff's contention that Defendant has waived his laches defense by failing to assert it in his answer, the Court rejects Plaintiff's argument because such failure did not result in any unfair surprise or prejudice

12

to Plaintiff. Plaintiff has suffered no unfair surprise or prejudice because Defendant specifically asserted his laches defense in his summary judgment motion, and Plaintiff has had a full opportunity to brief and argue the merits of such defense. See Brinkley, 180 F.3d at 612-13; Grunley Walsh U.S., LLC v. Raap, 386 F. App'x 455, 459 (4th Cir. 2010) (unpublished); cf. Bland v. Fairfax County, 799 F. Supp. 2d 609, 612-13 (E.D. Va. 2011) (Cacheris, J.) (finding waiver due to unfair surprise and prejudice where a defendant first raised a defense at trial). Moreover, although Plaintiff argues that it was caught off guard by Defendant's laches defense, Plaintiff "admittedly anticipated the Faragher/Ellerth affirmative defense based primarily upon the way [Defendant] conducted discovery." Pl.'s Mem. Opp'n Mot. for Summ. J. at 18. Under one element of the Faragher/Ellerth defense, a defendant must establish that, with respect to actions of a supervisor, the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 745. As part of such inquiry, courts consider the plaintiff's delay in attempting to take advantage of corrective opportunities provided by the employer. E.g., Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 270 (4th Cir. 2001). Therefore, given the similarities between the Faragher/Ellerth inquiry into a plaintiff's delay in taking advantage of

13

corrective opportunities provided by an employer and the laches inquiry into whether the plaintiff unreasonably delayed in asserting her claim, the Court finds that Plaintiff's admission that she anticipated Defendant's Faragher/Ellerth defense based on his discovery strategy also suggests that she suffered no unfair surprise or unfair prejudice from Defendant first asserting his laches defense via his summary judgment motion. Accordingly, the Court finds that Defendant has not waived his asserted laches defense.

The Court will now turn to the merits of Defendant's laches defense. Defendant asserts that he has established the first element of laches because the Plaintiff unreasonably delayed in waiting approximately three years before reporting the alleged racial harassment. Def.'s Mem. Supp. Mot. for Summ. J. at 22. More specifically, in Defendant's view, Plaintiff's delay was unreasonable because she waited almost three years to first inform a supervisor of the alleged racial harassment despite the following undisputed facts: (1) the alleged harassment began almost immediately when Plaintiff was assigned to Telecare, (2) she allegedly suffered extreme abuse for years, (3) she was aware of the HVAMC policies on workplace harassment, and (4) she received training on such policies. See id. at 19-22. As to prejudice, Defendant argues that Plaintiff's delay prejudiced him in the following manner: (1) Defendant must defend against

"an expansive period of escalating harassment" that he would not otherwise have had to defend against if Plaintiff had complained of the alleged harassment when it began; (2) Plaintiff's memory of the details of the alleged harassment, including the frequency of certain conversations, has faded; and (3) if Plaintiff establishes liability, damages will be assessed based on the entire period of the hostile work environment, even though Plaintiff's failure to report the harassment at its inception deprived Defendant of an opportunity to correct the situation. See id. at 22-25.

In response, regarding lack of diligence, Plaintiff contends that her delay in reporting the alleged harassment was not unreasonable because she was "trying to work through her difficulties in Telecare and [to] avoid angering her coworkers by complaining." Pl.'s Resp. Opp'n Mot. for Summ. J. at 23. As to prejudice, Plaintiff argues that Defendant suffered no prejudice because two and one-half years is not an "inordinate amount of time" and "the nature of these allegations is such that no one . . . will remember the exact dates, the exact circumstances and the exact language used when these types of acts of racial harassment occur." Id. at 24.

After carefully considering the parties' submissions and weighing the equities in this case, the Court concludes that Defendant is not entitled to summary judgment on his laches

15

defense because of genuine disputes of fact regarding the prejudice element of laches. The comparatively short delay in this case from the onset of the alleged harassment—a little more than two and one-half years—compared to other laches cases, e.g., Smith v. Caterpillar, Inc., 338 F.3d 730, 734 (7th Cir. 2003) (eight and one-half year delay), as well as the fact that Plaintiff has alleged that the harassment was continuous throughout the two and one-half years and even occurred subsequent to her initial complaint, indicates that on the "sliding scale" Defendant must make a fairly strong showing of prejudice to warrant dismissal of Plaintiff's entire action under the doctrine of laches, see id. at 733-34. However, there are genuine disputes of material fact as to the degree of prejudice Defendant has suffered from Plaintiff's faded memory. Likewise, there are genuine disputes of material fact regarding the extent to which Plaintiff's failure to more timely report the alleged racial harassment caused prejudice to Defendant by subjecting him to liability for harassment that was more severe, or over a longer period, than what might otherwise have occurred if Plaintiff reported such alleged harassment at its inception. In short, genuine disputes of material fact regarding the extent of prejudice Defendant suffered from Plaintiff's alleged delay preclude summary judgment in Defendant's favor and dismissal of

Plaintiff's entire action under the doctrine of laches.[5] See Jeffries v. Chi. Transit Auth., 770 F.2d 676, 679 (7th Cir. 1985) (noting that "[l]aches is generally a factual question not subject to summary judgment" (citations omitted)). That said, if the facts at trial establish that Plaintiff unreasonably delayed in complaining of the alleged harassment and such delay prejudiced Defendant, under the doctrine of laches, the Court will craft the appropriate remedy to achieve equity.[6]

---

[5] To the extent that genuine issues of material fact exist regarding the prejudice element of laches, the Court need not assess the sufficiency of Defendant's showing with respect to the diligence element.

[6] Cf., e.g., Pruitt, 472 F.3d at 929 (in dicta, stating: "There remains the final question posed by Morgan: 'what consequences follow if laches is established? The district court assumed that the upshot of laches must be outright dismissal. Yet that's not the only possible consequence. A less severe consequence would be to carve off the aspects of the plaintiffs' claim that are no longer subject to meaningful adversarial testing." (internal citations omitted) (quoting Morgan, 536 U.S. at 122)). In this case, Defendant did not seek summary judgment on laches with respect to any particular subset of the alleged harassment, instead seeking dismissal of Plaintiff's entire action. In addition, Defendant's generalized evidence of prejudice through Plaintiff's lapsed memory does not present a sufficient factual basis for the Court to conclude that laches bars any particular subset of the allegations in Plaintiff's claim. Furthermore, the Court notes that in his summary judgment motion, Defendant did not contest whether Plaintiff has adequately demonstrated that any harassment by Plaintiff's coworkers is attributable to Defendant. Neither did Defendant seek summary judgment on any claims of harassment alleged to have occurred prior to the point at which a reasonable juror could conclude Defendant was on actual or constructive notice of the alleged harassment. See Howard v. Winter, 446 F.3d 559, 568-69 (4th Cir. 2006) (affirming summary judgment for alleged harassment occurring prior to point at which the defendant was on notice of the alleged harassment). And Defendant has not sought to file a second summary judgment motion in accordance with Local Rule 56(C) and now, seven days prior to trial, any such motion likely would be denied. While it is possible that the jury might be asked to decide by interrogatory when Defendant had actual or

Accordingly, the Court **DENIES** Defendant's motion for summary judgment based on the defense of laches.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion in Limine No. 1, ECF No. 35. The Court **DENIES** Defendant's Motion for Summary Judgment, ECF No. 24.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/
Mark S. Davis
United States District Judge

Mark S. Davis
United States District Judge

Norfolk, Virginia
April 14, 2015

---

constructive notice of any harassment and instructed that Plaintiff's damages are limited to harm sustained after such notice, that issue presently is not before the Court.